FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRIC OF TEXAS
Midlan Division

MAY 2 6 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA

V.                                CASE: 7:13-CR-248-01 RAJ

CESAR ZUBIATE
    Defendant,

### EMERGENCY MOTION FOR A REDUCTION IN SENTENCE
### PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)

Comes now the Defendant, Cesar Zubiate Pro-se and hereby Files this Pro-se Emergency Motion for a Reduction in Sentence to 18 U.S.C. § 3582(c)(1)(A)(i) and states the following:

The Defendant, Cesar Zubiate Files this Emergency Motion to Re-sentence him to a sentence of imprisonment of time-served, Pursunt to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1), 5239 (Dec. 21, 2018).

The Defendant was arrested on July 25, 2013 in Odessa TX. and was sentenced on February 13, 2014 and currently housed at Oakdale FCI-II.

The Defendant is 46 years old with medical diagnoses of high blood pressure and high _____.  He has been confined for more than 6 years and 10 months and got 8 months remaining and has no disciplinary incidents in BOP.  To the contrary, he has worked hard, taken classes, and kept his head down.  In candor, his confinement has been utterly uneventful until now.

COVID-19 unleashed itself on the inmate population and Staff at BOP'S facilities in Oakdale, LA. In March of 2020 in a terrifying manner not seen at any other BOP facility nationwide[1]

1

According to the BOP website, the impact of COVID-19 on the BOP facilities at Oakdale, as of May 4, 2020, 7 inmates have died from the virus[2], 46 inmates and 17 staff had tested positive for the virus, and at least 60 inmates and an unknown number of staff were in quarantine[3]. "It's been simultaneous, just people getting sick back to back to back to back," stated Carey Trammel, a union representative for guards at FCI Oakdale. "We don't know how to protect ourselves. Staff are working 36-hour shifts-there's no way we can keep going on like this." Trammel believes that all Oakdale prison staff have been exposed to the virus and should be in self-quarantine. Neither BOP nor the warden of FCI Oakdale provided comment to the Post.

A local media outlet, The Lens, reported on March 31, 2020, that BOP has stopped testing inmates at Oakdale who are symptomatic for COVID-19 because of "sustained transmission" at the facilities[4]. In other words, to conserve valuable testing symptoms is positive. The virus is that rampant. Yet, BOP REPORTEDLY REFUSES TO RELEASE THE number of presumed positive cases, making it impossible to know exactly how many inmates at Oakdale have contracted the virus. Evidently, it also declined to answer specific questions about what is

---

1 The Oakdale Federal Correction Complex consists of three facilities: two main prisons known as FCI Oakdale I and II, and a minimum-security satellite camp that is part of the FCI Oakdale II complex. Brannan is confined in the satellite camp.

2 BOP confirmed the first inmate death in a press release issued on March 28, 2020. See https://www.bop.gov/resources/news/pdfs/202000328_press_release_oak_death.pdf

3 Kimberly Kindy, "An explosion of coranavirus cases cripples a federal prison in LA.," Washington Post, March 29, 2020. 3:10 pm CDT. See https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

4 https://thelensnola.org/2020/03/31/louisiana-federal-prison-no-longer-testing-symptomatic-inmates-for-coronavirus-due-to-sustained-transmission/

taking place at Oakdale, such as when the decision was made to stop testing, whether or not guards have been moving back and forth between the multiple prison facilities at the complex, how many inmates have been transferred to the hospital, or how the prison is defining "sypotomatic".

Reportedly, it is composed of two dormitories with approximately 70 bunk beds in each one, with no cells or other means of isolating or social distancing[5]. Staff and guards travel back and forth between the facilities in the Oakdale complex. The Defendant files this emergency motion for relief from his sentence because time is of the essence. A minimum-security prison complex for low-level offenders, Oakdale is on the cusp of becoming a defacto Death Row.

Fox News has explained than more than 70 percent of federal prisoners tested nationwide for coronavirus were positive[6]. Soap and hand sanitizer[7] is only available if one can purchase it from commissary.

Attorney General William Barr issued a memorandum[8] on March 26, 2020, authorizing BOP to transfer at-risk, non-violent inmates

---

[5] https://thelensnola.org/2020/03/31/lousiana-federal-prison-no-longer-testing-symptomatic-inmates-for coronavirus-due-to-sustained-transmissio

[6] "The federal Bureau of Prisons" latest figures show that out of the 2,700 tests performed systemwide, nearly 2,000 have come back positive" available at:
https://www.foxnews.com/us/los-angeles-prison-coronavirus-outbreak-70-percent-federal-prisoners-test-positive

[7] Only non-alcohol based hand sanitizers are generally available in prisons. Non-alcohol based hand sanitizers is not what the Center for Disease control recmmends. See "Soap and sanitizer can keep coronavirus at bay, but many prisoners can't get them," USA Today, March 7, 2020 (available at:
https://www.usatoday.com/story/news/investigations/2020/03/07/prison-policies-inmates-best-coronavirus-practices/4978412002/)

[8] https://www.justice.gov/file/1262731/download

who pose minimal likelihood of recidivism and has served 50% or more or have 18 months or less from BOP facilities to home confinement to protect the safety of BOP personnel and the inmate population in the face of COVID-19. Barr recognized that some inmates may be safer at home than in BOP facilities. The Defendant is such an inmate who has served over 50% of his total sentence.

Given the extaordinary circumstances of the spread of COVID-19 at Oakdale-and his heightened risk as a 46 year-old man with a serious medical condition[9]-he cannot wait any longer to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

For many years, 18 U.S.C. § 3582(c)(1)(A)(i) has allowed district courts to reduce sentences of federal inmates for "extraordinary and compelling reasons," often referred to as "compassionate release." Until December 21, 2018, only the Director of BOP could request such a sentence reduction.

Under the First Step Act. BOP no longer has a monopoly on the dedision whether fo file "compassionate release" motions. Rather, federal inmates may file them with the original sentencing court. 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b)(1) of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

The Sentencing Commission policy statement on reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) lists three specific categories of "extraordinary and compelling reasons" but expressly does not restrict what combination of factors can warrant release. U.S.S.G. § 1B1.13 (p.s.), comment. (n.1.(A)-(D) 10.

---

9   The American Heart Association reports that "elderly people

with...high blood pressure may be more susceptible to the coronavirus and more likely to develop more severe symptoms." Data shows a 6% rate of death of people with COVID-19 and high blood pressure. What people with high blood pressure need to know about COVID-19, March 31, 2020, https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19.

10 The three specific categories are: (1) terminal illness of the inmate, or an irrecoverable serious physical, medical, or mental issue that prevents the inmate from providing himself with self-care within the prison; (2) age of the defendant, combined with a serious deterioration in physical or mental health because of the aging process; and (3) death or incapacitation of the caregiver of the inmate's spouse or partner. See U.S.S.G. § 1B1.13 (p.s.), comment. (n.1(A)-(C).

"Extraordinary and compelling reasons" warrant a reduction of the Defendant's sentence and immediate release from confinement. The rampant spread of COVID-19 at the Oakdale facilities-resulting in the deaths of at least three inmates, the hospitalizations of prison staff, the isolation and quarantining of dozens of inmates who are positive for the virus or have been exposed to it, and the self-quarantining of countless staff-make it unsafe for a 46-year-old man with high blood pressure to remain confined there.

A sentence reduction is consistent with and upported by the factors in 18 U.S.C. § 3553(a), whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable." Two of those factors now carry more weight than at the time of sentencing: (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and (2) "the need for the sentence imposed...to provide the defendant with...medical care...in the most effective manner," 18 U.S.C. § 3553(a)(2)(D). First, the Defendant's age and vulnerability to COVID-19 weigh in favor of reducing his sentence. Second, he is a non-violent offender confined in a mimimum-security camp and poses a low risk of recidivism. He poses no threat of violence to the community should the Court release him from custody. Third, his impeccable conduct in prison weighs heavily in his favor. Fourth,

he has a re-entry plan that will prevent recidivism and ensure his health and safety as will as the public's health and safety should the Court reduce his sentence. He would be extradited to Mexico where he will reside with his wife and children, he would be supported by his family

The Defendant will self-quarantine at home as long as necessary to ensure his health and safety and that of others. And he will obtain suitable, gainful employment. In sum, the § 3553(a) factors weigh heavily in the Defendant's favor.

This Court is in the business of weighing equities to make consequential decisions. Yet, other than habeas corpus proceedings in death penalty cases, few prior cases could have presented the potential, if not likely, life-or-death consequences that this case presents. The Court should grant this motion because so rarely do justice and mercy require the same result. See Walker v. Martel, 709 F. 3d 925, 950-51 (9th Cir. 2013) (Gould, J., concurring in part & dissenting in part) ("Shakespeare told us that '[t]he quality of mercy is not strain'd,' Milton instructed us to "temper so [j]ustice with mercy" and advised us that '[m]ercy [must] colleague with justice,' and President Lincoln reminded us that 'mercy bears richer fruits than strict justice.'") (citations omitted); The Torah, Micah 6:8 ("what does the Lord require of you but to do justice, and to love kindness, and to walk humbly with your God.").

## CONCLUSION

Wherefore, based on all of this important information, after more than   6   years of confinement and facing imminent grave illness or death, the Defendant is prepared to walk humbly in this

world. The Defendant, Pro-se, respectfully requests that the Court Grant this motion and re-sentence him to a sentence of imprisonment of time-served.

Respectfully Submitted,

Cesar Zubiate
#22597-380
FCI    II
P.O.Box 5010
Oakdale,    LA.   71463

Case 7:13-cr-00248-DC   Document 92   Filed 05/26/20   Page 8 of 8

22597-380
Cesar Zubiate
PO BOX 5010
Fci#2
Oakdale, LA 71463
United States

**RECEIVED**

MAY 26 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
UNITED STATES COURTHOUSE
200 E. WALL STREET, ROOM 222
MIDLAND, TEXAS 79701

